UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:25-CV-00150-GNS

MARIANO VENTURO GONZALEZ                                                PETITIONER

v.

KRISTI NOEM, in her Official Capacity as
Secretary, Department of Homeland Security;
TODD LYONS, in his Official Capacity as
Acting Director, U.S. Immigration and
Customs Enforcement;
PAM BONDI, in her Official Capacity as
Attorney General of the United States; and
MIKE WOODRUM, in his Official Capacity
as Casey County Jailer                                                  RESPONDENTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Petitioner's Petition for Writ of Habeas Corpus (DN 1) and Respondents' Motion to Dismiss (DN 6).  Pursuant to the Court's Show Cause Order (DN 4), the parties filed additional briefing (DN 6, 10, 13, 17), and the parties presented evidence and made arguments during the Show Cause Hearing held on November 5, 2025.

## I.    BACKGROUND

Petitioner Mariano Venturo Gonzalez ("Gonzalez") is a citizen of Mexico who has resided in Kentucky for more than 20 years.  (Pet. 4, DN 1).  He has familial ties to Lincoln County, Kentucky, where he had resided until his detention.  (Pet. 4).

In the early morning hours of October 18, 2025, Gonzalez was arrested for three traffic violations relating to his operation of a moped in Lincoln County.  (Pet. 4).  At 9:58 AM that morning, he was ordered to be released on his own recognizance, but instead, Gonzalez was detained and housed at the Casey County Detention Center ("CCDC").  (Pet. Ex. A, at 1, DN 1-1); *see* KRS 431.066(3) ("If a verified and eligible defendant poses low risk of flight, is likely to

1

appear for trial, and is not likely to be a danger to others, the court shall order the defendant released

on unsecured bond or on the defendant's own recognizance subject to such other conditions as the

court may order.").

Earlier that morning, at 9:34 AM, a staff member at Casey County Detention Center

("CCDC") had notified the U.S. Immigration and Customs Enforcement ("ICE") by email that the

facility had two inmates—including Gonzalez—who lacked a valid social security number or

immigration documentation. (Keith Decl. ¶¶ 6, 8, DN 13-1; Keith Decl. Attach. A, at 5, DN 13-

2). A representative of ICE responded about 10 minutes later, indicating that a review of those

inmates would be conducted. (Keith Decl. ¶ 9; Keith Decl. Attach. A, at 4-5). At 10:20 AM, an

ICE Deportation Officer emailed the CCDC notifying it that detainers would be sent for both

inmates, and the detainers and warrants arrived via email at 12:18 PM that day. (Keith Decl. ¶ 12;

Keith Decl. Attach. A, at 2-3). Based on the detainers and warrants, the expectation was that

CCDC would notify ICE prior to Gonzalez's release, so he could be taken into ICE custody.

(Duckworth Decl. ¶ 6, DN 6-1 ("[A] request for an immigration detainer was tendered to the CCDC

on October 18, 2025[,] requesting that the CCDC alert ICE ERO when the Petitioner would be

released so that ICE ERO could take custody of the Petitioner.")).

The ICE detainer is a form titled "Immigration Detainer – Notice of Action" (DHS Form

I-247A (5/25)). (Pet. Ex. B, at 2-5, DN 1-2). As a sister court has explained:

> An immigration detainer notifies a state or locality that ICE intends to take custody
> of a removable alien when the alien is released from that jurisdiction's custody.
> ICE issues the detainer to request that the state or locality to cooperate by notifying
> ICE of the alien's release date and by holding the alien for up to 48 hours—which
> is based on ICE's determination that [] it has probable cause that the alien is
> removable.

*Lopez-Lopez v. Cnty. of Allegan*, 321 F. Supp. 3d 794, 797 (E.D. Mich. 2018) (citing 8 C.F.R. §

287.7(a), (d)).

The detainer in this instance is addressed to the "Casey County Jail" (sic) and, as completed, states in part:

> **IT IS THEREFORE REQUESTED THAT YOU:**
> . . .
> - **Serve the individual** a copy of this form, and complete and return to ICE the service information at the bottom of this form.  If the detainer is not served, the detainer is not valid and may not be relied upon to maintain custody of the individual.
> - **Notify DHS** as early as practicable (at least 48 hours, if possible) before the individual is released from your custody.  Please notify DHS by calling ⊠ U.S. Immigration and Customs Enforcement (ICE) or ☐ U.S. Customs and Border Protection (CBP) at <u>502-224-0431</u>.
> . . .
> - **Maintain custody** of the individual for a period **<u>NOT TO EXCEED 48 HOURS</u>** beyond the time when he/she would otherwise have been released from your custody to allow DHS to assume custody.  This detainer arises from DHS authorities and should not impact decisions about the individual's bail, rehabilitation, parole, release, diversion, custody classification, work, quarter assignments, or other matters.

(Pet. Ex. B, at 2).  The completed form is dated October 18, 2025, and it is signed by a deportation officer.  (Pet. Ex. B, at 2-3).  The bottom of the second page of the form indicates the CCDC was supposed to serve the detainer on the inmate, note the method of service, fill-in the officer's name and title, and then sign the form.  (Pet. Ex. B, at 3).  All copies of this form in the record were not completed as to service of the detainer by CCDC staff on Gonzalez, so there is no proof in the record that Gonzalez was even served with a copy of the detainer.  (Pet. Ex. B, at 3; Resp'ts' Resp. Show Cause Order Ex. 5, at 3, DN 6-5; Keith Decl. Attach. A, at 9).

The warrant form is titled "Warrant for Arrest of Alien"" (Form I-200 (Rev. 9/16)), and it is directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations[.]"  (Pet. Ex. B, at 1).  As completed, this form states:

> I have determined that there is probable cause to believe that <u>VENTURA GONZALEZ, MARIANO</u> is removable from the United States.  This determination is based upon:

3

> . . .
> ☒ statements made voluntarily by the subject to an immigration officer
> and/or other reliable evidence that affirmatively indicate the subject either
> lacks immigration status or notwithstanding such status is removable under
> U.S. immigration law.
> **YOU ARE COMMANDED** to arrest and take into custody for removal proceeding
> under the Immigration and Nationality Act, the above-named alien.

(Pet. Ex. B, at 1). This form was signed at 12:06 PM on October 18, 2025, by an immigration

officer. (Pet. Ex. B, at 1). The certificate of service for the warrant indicates that Gonzalez

purportedly was served by a deportation officer in Louisville, Kentucky, on October 18, 2025.

(Pet. Ex. B, at 1). The proof presented at the show cause hearing, however, refutes the warrant's

representation that Gonzalez was in Louisville (approximately 100 miles away from the CCDC

facility) on October 18, 2025, or that the deportation officer ever read the warrant to Gonzalez in

Spanish on that date. Therefore, it is not plausible that the warrant was served on Gonzalez that

day as represented by the completed warrant.

ICE detainers are subject to the provisions of 8 C.F.R. § 287.7. In relevant part, that

regulation provides:

> Upon a determination by the Department to issue a detainer for an alien not
> otherwise detained by a criminal justice agency, such agency shall maintain custody
> of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and
> holidays in order to permit assumption of custody by the Department.

8 C.F.R. § 287.7(d). As noted above, there is no proof that the detainer was ever served on

Gonzalez. Assuming the detainer was issued on a Saturday contemporaneously upon its receipt

by the CCDC, the 48-hour period did not begin running until Monday, October 20, 2025, and

would have expired at 12:00 AM on Wednesday, October 22, 2025. Gonzalez was not released at

that time.

On the morning of October 23, 2025, Gonzalez appeared in Lincoln District Court, where

he pleaded guilty to the charge of having no operators or moped license, and the remaining charges

were dismissed.  (Resp'ts' Resp. Show Cause Order Ex. 3, at 2, DN 6-3).  At 12:05 PM, CCDC

staff notified ICE that Gonzalez could be picked up from the facility.  (Keith Decl. ¶¶ 15-16; Keith

Decl. Attach. C, at 5, DN 13-4).  At approximately 7 AM on October 24, 2025, Gonzalez was

taken into ICE custody, from where he was taken to Louisville before being transported to the

Kenton County Detention Center.  (Duckworth Decl. ¶¶ 10-11; Keith Decl. Attach. C, at 3).

Gonzalez appeared before an immigration judge on November 3, 2025, and a further

hearing is scheduled for November 13, 2025.  Gonzalez remains in custody and is housed at the

Kenton County Detention Center pending an immigration judge's determination of whether he is

entitled to bond.

Gonzalez filed the Petition for Writ of Habeas Corpus against Respondents:  Kristi Noem,

in her Official Capacity as Secretary, Department of Homeland Security; Todd Lyons, in his

Official Capacity as Acting Director, U.S. Immigration and Customs Enforcement; Pam Bondi, in

her Official Capacity as Attorney General of the United States; and Mike Woodrum ("Woodrum"),

in his Official Capacity as Casey County Jailer[1] (collectively, "Respondents").   (Pet. 3-4).

Gonzalez alleges Respondents violated his Fifth Amendment right of due process of law due to

his unlawful detention.  (Pet. 5).  Gonzalez also moved for temporary restraining order.[2]  (Pet'r's

Mot. TRO, DN 3).

---

[1] "In Kentucky, the Jailer—a constitutionally elected county official—has "custody, rule and
charge of the jail" or detention center in his or her county and 'of all persons in the jail.'" *Moore
v. Mason Cnty.*, No. 16-185-DLB-CJS, 2018 WL 4211732, at *1 (E.D. Ky. Sept. 4, 2018) (citing
Ky. Const. § 99; KRS 71.020).  Therefore, as the Casey County Jailer, Woodrum is responsible
for the CCDC and had custody of Gonzalez while he was incarcerated at that facility.
[2] Because the Petition is granted, it is unnecessary to address Gonzalez's TRO motion, which is
denied as moot.

## II. DISCUSSION

A writ of habeas corpus "may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Section 2241 "is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting 28 U.S.C. § 2241(c)). In seeking habeas relief, Gonzalez bears the burden of proving by a preponderance of the evidence that his detention was unlawful. *See Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023); *Lallave v. Martinez*, 609 F. Supp. 3d 164, 171 (E.D.N.Y. 2022).

### A. Jurisdiction

After the Petition was filed, ICE took custody of Petitioner and moved him out of this judicial district to the Kenton County Detention Center. Because Petitioner is no longer in this district, Respondents challenge this Court's jurisdiction, but this argument is not well-taken. (Resp'ts' Resp. Show Cause Order 6-7, DN 6; Resp't's Resp. Show Cause Order 3-5, DN 13). "A district court's jurisdiction generally is not defeated when a prisoner who has filed a [Section] 2241 petition while present in the district is involuntarily removed from the district while the case is pending." *White v. Lamanna*, 42 F. App'x 670, 671 (6th Cir. 2002) (citing *United States ex rel. Snyder v. Illinois*, 442 F. Supp. 75, 76 n.2 (N.D. Ill. 1977)). Therefore, the Court has jurisdiction to consider Gonzalez's Petition.

Respondents also argue that 8 U.S.C. § 1252(g) precludes this Court's exercise of jurisdiction. (Resp'ts' Resp. Show Cause Order 7-8). That statute provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal

orders against any alien under this chapter." 8 U.S.C. § 1252(g).  The Supreme Court has explained

this narrow jurisdictional limit "applies only to three discrete actions that the Attorney General

may take" as outlined in that statute.  *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471,

482 (1999).  Because this case does not directly involve any of those actions, Respondents'

argument lacks merit, and this Court has jurisdiction under 28 U.S.C. § 2241.

### B.    Due Process

Gonzalez alleges that this detention at the CCDC violated his constitutional rights.  (Pet.

5).  The Fifth Amendment's Due Process Clause applies to all persons, including non-citizens,

regardless of their immigration status.  *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025); *see also*

*Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) ("'It is well established that the Fifth

Amendment entitles aliens to due process of law' in the context of removal proceedings." (internal

quotation marks omitted) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993))).

To determine whether a civil detention violates a detainee's due process rights, a court

applies the three-part balancing testing articulated in the *Mathews v. Eldridge*, 424 U.S. 319

(1976).  The factors to be considered are:  (1) "the private interest that will be affected by the

official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures

used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3)

"the Government's interest, including the function involved and the fiscal and administrative

burdens that the additional or substitute procedural requirement would entail."  *Id.* at 335.

#### 1.    *Private Interest*

"Freedom from bodily restraint has always been at the core of the liberty protected by the

Due Process Clause from arbitrary governmental action.  'It is clear that commitment for any

purpose constitutes a significant deprivation of liberty that requires due process protection.'"

*Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (internal citation omitted) (citing *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982)). "'In our society liberty is the norm,' and detention without trial 'is the carefully limited exception.'" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (citation omitted). "[W]hen assessing the private interest, courts consider the detainee's conditions of confinement, namely, 'whether a detainee is held in conditions indistinguishable from criminal incarceration.'" *Martinez v. Noem*, No. 5:25-CV-01007-JKP, 2025 WL 2598379, at \*2 (W.D. Tex. Sept. 8, 2025) (quoting *Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025)).

As noted above, the 48-hour period pursuant to the ICE detainer expired on October 22, 2025. "[T]he existence of an ICE detainer is not custody." *United States v. Abrego*, 787 F. Supp. 3d 830, 856 n.22 (M.D. Tenn. 2025) (citing *United States v. Aleman-Duarte*, No. 3:19-CR-149-PLR-DCP, 2020 WL 236870, at \*3 (E.D. Tenn. Jan. 15, 2020)). "Rather, a detainer is merely a request by ICE for the court to hand over the defendant when the court's business with that defendant is concluded." *Id.* (citing *Aleman-Duarte*, 2020 WL 236870, at \*3); *see also N.S. v. Dixon*, 141 F.4th 279, 282 (D.C. Cir. 2025) ("[A]n ICE detainer is a 'request,' not an order, for another law enforcement agency hold a particular alien.").

The record reflects, however, that the only reason Gonzalez remained in the CCDC following the Lincoln District Court's order that he be released on his own recognizance on October 18 was the ICE detainer. It was not until six days later that ICE took custody of Gonzalez on October 24. *See United States v. Valdez-Hurtado*, 638 F. Supp. 3d 879, 885 (N.D. Ill. 2022) ("[E]nforcement of federal immigration law by removing immigrants from the country is a civil matter, not a criminal one. *Arizona v. United States*, 567 U.S. 387, 396 (2012). A removable person's presence in the United States is not a crime." (citing *Arizona*, 567 U.S. at 407)); *see also Abriq v. Metro. Gov't of Nashville*, 333 F. Supp. 3d 783, 786 (M.D. Tenn. 2018) ("Federal

immigration officials may seize aliens based on administrative warrants attesting to probable cause

of removability. *City of El Cenizo v. Texas*, 890 F.3d 164, 187 (5th Cir. 2018); 8 U.S.C. § 1357(a).

Arrests based on probable cause of removability—a civil immigration violation—have been long

recognized in the courts." (internal footnote omitted) (citing *Ochoa v. Campbell*, 266 F. Supp. 3d

1237, 1245 (E.D. Wash. 2017))). Therefore, Gonzalez's continued detention at the CCDC until

October 24, 2025, violated his due process rights because the ICE detainer was no longer in effect,

and he should have been released from custody.

The question then becomes *who* is responsible for Gonzalez's unlawful detention. That

fault lies with all Respondents. The CCDC should have released Gonzalez from custody when the

ICE detainer expired. The U.S. Respondents likewise share responsibility because Gonzalez was

only held at the behest of ICE. If the United States had wanted to take Gonzalez into custody, it

had 48 weekday hours to do so, and the action of no other court precluded ICE from taking custody

of Gonzalez. In addition, the United States failed to present any proof at the hearing that the ICE

warrant was ever properly served on Gonzalez, and the contrary evidence showed that the evidence

of service on the face of the warrant was facially inaccurate.

Respondents rely, in part, the Sixth Circuit's decision in *Garcia-Echaverria v. United*

*States*, 376 F.3d 507 (6th Cir. 2004), in arguing that Gonzalez was not in federal custody while at

the CCDC. (Resp'ts' Resp. Show Cause Order 5). In *Garcia-Echaverria*, the Sixth Circuit stated

that "an alien is not 'in custody' for removal purposes if he is detained pursuant to a sentence for

a criminal conviction, even if the INS has filed a detainer order with the prison where the petitioner

is incarcerated." *Garcia-Echaverria*, 376 F.3d at 510-11 (citations omitted). *Garcia-Echaverria*

is distinguishable because but for the ICE detainer, Gonzalez would not have been detained in the

CCDC because he had been ordered released by the local court. The CCDC was thus acting the

9

behest of ICE in unlawfully detaining Gonzalez beyond the time permitted by ICE detainer. *See Gilmore v. Ebbert*, 895 F.3d 834, 837 (6th Cir. 2018) (citing *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 489 n.4 (1973)).

Therefore, this factor strongly weighs in favor of Gonzalez.

### 2. *Risk of Erroneous Deprivation*

Under the second factor, a court must "assess whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." *Günaydin*, 784 F. Supp. 3d at 1187. Here, Gonzalez continued to be held by the CCDC at the behest of the U.S. Respondents due to the detainer. To date, Gonzalez has still not yet received a bond hearing, and his continued detention violates his due process rights. *See Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *5 (N.D. Cal. July 24, 2025) ("Where as here, 'the petitioner has not received any bond or custody hearing,' 'the risk of an erroneous deprivation of liberty is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for her detention." (quoting *Singh v. Andrews*, No. 1:25-CV-00801-KES-SKO (HC), 2025 WL 1918679 (E.D. Cal. July 11, 2025)). Accordingly, this factor likewise weighs in favor of Gonzalez.

### 3. *United States' Interest*

Finally, the United States' interest in detaining Gonzalez without a notice and hearing is low. He has been in the United States for more than twenty years, and the state court recognized that Gonzalez did not pose a risk of harm to the community in deciding to release him on his personal recognizance. Respondents did not argue or identify any burdens on the United States if Gonzalez had been provided proper notice, reasoning, and pre-deprivation hearing rather this detention beyond the 48-hour period. An immigration judge has not yet determined whether

Gonzalez will be released on bond.  As this Court has recognized, "a 'routine bond hearing before an [immigration judge]' presents 'minimal' fiscal and administrative burdens, and 'there is an established process for doing so that [the Department of Homeland Security] can readily follow here.'" *Alonso v. Tindall*, 3:25-CV-00652-RGJ, 2025 WL 3083920, at \*9 (W.D. Ky. Nov. 4, 2025) (quoting *Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511, at \*15 (E.D.N.Y. Oct. 6, 2025)).  Thus, this factor also weighs in favor of Gonzalez.

In sum, all three factors clearly support a finding that Gonzalez's detention violated his due process rights.  Gonzalez has met his burden of proving by clear and convincing evidence of this violation of his due process rights.

When individuals have been illegally detained by ICE, courts have ordered their release. *See Patel v. Tindall*, No. 3:25-CV-373-RGJ, 2025 WL 2823607, at \*6 (W.D. Ky. Oct. 3, 2025); *Barrera v. Tindall*, No. 3:25-CV-541-RGJ, 2025 WL 2690565, at \*7 (W.D. Ky. Sept. 19, 2025); *see also Roble v. Bondi*, No. 25-CV-3196 (LMP/LIB), 2025 WL 2443453, at \*5 (D. Minn. Aug. 25, 2025).  "Habeas has traditionally been a means to secure release from unlawful detention . . . ." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020).  Consistent with these norms, Gonzalez must be released and is entitled to a bond hearing on the merits before a neutral immigration judge.

### C.    Mootness

Finally, Respondents contend that this matter is moot and seek dismissal on this basis. (Resp'ts' Resp. Show Cause Order 6-7; Resp't's Resp. Show Cause Order 3-5).  The "cases or controversies" requirement in Article III of the U.S. Constitution dictates that an actual controversy must exist both at the time the petition is filed through all stages of the litigation.  *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90-91 (2013); *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78

11

(1990). If an event occurs making it is impossible for a court to grant relief, the case may become moot and no longer be within the court's jurisdiction. *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992); *Demis v. Sniezek*, 558 F.3d 508, 512 (6th Cir. 2009).

In this instance, Respondents violated Gonzalez's constitutional rights, and he has yet to have a determination of whether he should be released on bond pending the resolution of the removal proceedings. Therefore, there is a still a case or controversy to be determined.

### CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** as follows:

1.      The Petition for Writ of Habeas Corpus (DN 1) is **GRANTED**. The United States is directed to release Petitioner Mariano Venturo Gonzalez from custody **IMMEDIATELY** and to certify compliance with the Court's Memorandum Opinion and Order by filing on the docket no later than **9:00 AM ET on November 11, 2025**. During the pending removal proceedings, a neutral immigration judge will determine whether Gonzalez will be detained pending the resolution of those proceedings.

2.      Petitioner's Motion for Temporary Restraining Order (DN 3) is **DENIED AS MOOT**.

3.      Respondents' Motion to Dismiss (DN 6) is **DENIED**.

Greg N. Stivers, Chief Judge
United States District Court

November 10, 2025